IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–02990–MSK–KMT

KHALED ALATTAR,

    Plaintiff,

v.

AARON BELL,
CHRISTOPHER BELL,
RACHEL BELL and
WILLIAM BELL,

    Defendants.

## ORDER

This matter is before the court on "Luxeyard, Inc.'s Motion to Intervene" (Doc. No. 43, filed Mar. 20, 2014). "Defendants' Response to LuxeYard, Inc.'s Motion to Intervene" was filed on April 10, 2014. (Doc. No. 54.) "LuxeYard's Reply in Support of its Motion to Intervene" was filed on April 24, 2014. (Doc. No. 56.) For the following reasons, Luxeyards' Motion to Intervene is GRANTED.

## BACKGROUND

In December 2010, Plaintiff Khaled Alattar conceived the idea of LuxeYard, an online purveyor of luxury goods that follows the "flash sale" retail model. Plaintiff partnered with a business associate, Amir Mireskandari, to form LY Retail LLC to develop Plaintiff's idea and the domain name www.luxeyard.com was activated in May 2011.

In August 2011, Plaintiff and Mireskandari recognized that LY Retail needed additional capital to become fully operational and for future growth. As such, Plaintiff and Mireskandari approached Frederick Huttner and Kevan Casey, who laid out a plan to convert LY Retail into a publicly traded company through a reverse merger.[1] In this case, LY Retail was to be acquired by Top Gear, a publicly traded "shell" company. Allegedly, unbeknownst to Plaintiff, Casey and Huttner's true plan was to use LuxeYard to engage in an illegal "pump and dump" scheme, rather than to finance LuxeYard's operations and future growth.

The reverse merger was executed on November 8, 2011. Shortly thereafter Casey and Huttner allegedly financed and executed an aggressive marketing campaign to artificially inflate, or "pump," the price of LuxeYard's stock. Shortly thereafter Casey, Huttner, and other affiliates, including the defendants named in this case, allegedly sold, or "dumped," a large volume of supposedly unrestricted LuxeYard shares that Plaintiff alleges should have been sale-restricted.

---

[1] The Securities and Exchange Commission has described a reverse merger as follows:

> In a reverse merger transaction, an existing public "shell company," which is a public reporting company with few or no operations, acquires a private operating company. Typically, the shareholders of the private operating company exchange their shares for a large majority of the shares of the public company. Although the public shell company survives the merger, the private operating company's shareholders gain a controlling interest in the voting power and outstanding shares of stock of the public shell company. Also typically, the private operating company's management takes over the board of directors and management of the public shell company. The assets and business operations of the post-merger surviving public company are primarily, if not solely, those of the former private operating company.

U.S. SEC, *Investor Bulletin: Reverse Mergers*, available at www.sec.gov/investor/alerts/reversemergers.pdf (last visited May 21, 2014).

Following this sell-off, LuxeYard's stock price plummeted from a high of over $2.00 per share to $.10 per share.

Based on these facts, Plaintiff asserts state law conspiracy, aiding and abetting, and unjust enrichment claims against Defendants for their alleged involvement in the "pump and dump" scheme perpetrated principally by Casey, Huttner and other affiliates. Casey, Huttner, and a number of their other affiliates have been named as Defendants in a related Texas state court case.[2] (Am. Compl. ¶ 5.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) provides that, on timely motion, the court must permit intervention as of right to anyone who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a)(2). Under Tenth Circuit law interpreting this rule, "an applicant may intervene as a matter of right if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties." *Elliott Indus. Ltd. P'ship v. B.P. Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005).

---

[2] *Allatar v. Casey, et al,* Case No. 2012-54501, filed September 18, 2012 in the 113th Judicial District Court of Harris County, TX. (Am. Compl. ¶ 5 n.2.)

Federal Rule of Civil Procedure 24(b)(1)(B) provides that, on timely motion, the court may permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). The decision whether or not to grant a motion for permissive intervention under Rule 24(b) is within the district court's sound discretion. *See, e.g., City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996). In exercising this discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ANALYSIS

As an initial matter, Defendants argue the Motion to Intervene should be denied because LuxeYard failed to comply with Fed. R. Civ. P. 24(c), which requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." The failure to attach such a pleading can be fatally defective to a motion to intervene. *See Shell v. Henderson,* No. 09-cv-00309-MSK-KMT, 2010 WL 2802651, at *1 (D. Colo. July 15, 2010).

Defendants are technically correct that LuxeYard has failed to comply with Rule 24(c), as the only pleading attached to LuxeYard's Motion is a Texas State Court pleading entitled "LuxeYard, Inc's Cross-Claims and Third-Party Petition." (Mot., Ex. A.) However, the purpose of Rule 24(c) is "to enable the court to determine whether the applicant has the right to intervene, and, if not, whether permissive intervention should be granted." *Miami Cnty. Nat. Bank of Paola, Kan. v. Bancroft,* 121 F.2d 921, 926 (10th Cir. 1941). In that respect, LuxeYard has attached to its Reply a proposed Complaint in Intervention, which features almost the exact same

4

claims included in the Texas State Court pleading attached to its Motion. As such, the court finds that it and Defendants received adequate notice of the claims LuxeYard seeks to assert as part of its intervention. Therefore, in the interests of judicial economy, the court declines to deny the Motion to Intervene based on LuxeYard's technical noncompliance with Rule 24(c).

Turning to the merits of LuxeYard's proposed intervention, LuxeYard seeks to intervene as a matter of right under Rule 24(a)intervention of right, pursuant to Fed. R. Civ. P. 24(a), or, alternatively, permissive intervention, pursuant to Fed. R. Civ. P. 24(b). Because the court will exercise its discretion and allow LuxeYard to intervene under Rule 24(b), it need not address whether LuxeYard is also entitled to intervene as a matter of right. *See Lower Ark. Valley Water Conservancy Dist. v. United States,* 252 F.R.D. 687, 690 (D. Colo. 2008).

As discussed, permissive intervention requires that the would-be intervenor have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Here, the claims included in LuxeYard's proposed Complaint in Intervention relate to the exact same facts and circumstances outlined in Plaintiff's Amended Complaint—namely the reverse merger that converted LuxeYard into a publicly-traded company and the subsequent alleged "pump and dump" scheme perpetrated by Casey, Huttner, and their affiliates, including Defendants.

Further, several of LuxeYard's proposed claims are nearly identical to those asserted by Plaintiff. More specifically, as in Plaintiff's Amended Complaint, LuxeYard's proposed Complaint in Intervention seeks to assert claims for civil conspiracy and unjust enrichment against Defendants based on their alleged involvement in the mass-sale, or "dump" of LuxeYard shares.

5

To be sure, LuxeYard also seeks to assert a claim for profit disgorgement pursuant to Section 16(b) of the Securities Exchange Act of 1934. However, Plaintiff is not permitted to bring such a claim unless or until he has made a demand of the corporation to bring such a claim, and that demand is rejected. *See, e.g., Cramer v. Gen. Tel. & Elecs. Corp.* 582 F.2d 259, 276 n.22 (3d Cir. 1978). LuxeYard's intervention makes clear that it indeed intends to assert a Section 16(b) claim. *See Jones v. Fremont Energy Corp.,* 537 F. Supp. 300, 301 (D. Colo. 1982 (D.C.N.Y. 1966) (primary right to sue under Section 16(b) for disgorgement of "short-swing" profits lies with the corporation). And, as with LuxeYard's other claims, the Section 16(b) claim is based on the same facts as the claims asserted by Plaintiff.

Defendants nevertheless argue that they would be prejudiced if LuxeYard were allowed to intervene because LuxeYard has already filed suit against them in Texas, and that suit is ongoing. Defendants assert that they it would be inequitable, prejudicial, and a waste of judicial resources if they were forced to defend against LuxeYard in two jurisdictions.

The court rejects Defendants' contention of prejudice. First, Defendants have not cited any authority to support their position that being sued in multiple jurisdictions is the type of prejudice contemplated by Rule 24(b)(3). Second, and more importantly, Defendants have moved to dismiss the Texas case on grounds that the Texas court lacks personal jurisdiction over them. The court agrees with LuxeYard that Defendants "should not be allowed to have it both ways." (Reply at 6.) It would be inequitable for Defendants to avoid suit in Texas based on a lack of personal jurisdiction while also avoiding LuxeYard's claims here, in their home-jurisdiction, based on the existence of the Texas suit. Further, Defendants' contention of

prejudice is further undercut by the fact that LuxeYard has agreed to voluntarily dismiss the Texas suit if they are allowed to intervene here.

Therefore, for the foregoing reasons, it is

ORDERED that "Luxeyard, Inc.'s Motion to Intervene" (Doc. No. 43) is GRANTED. LuxeYard is allowed to permissively intervene pursuant to Fed. R. Civ. P. 24(b). The Clerk of Court is directed to file LuxeYard's Complaint in Intervention (Doc. No. 56-1).

Dated this 30th day of May, 2014.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge