IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02990–MSK–KMT

KHALED ALATTAR,

    Plaintiff,

v.

AARON BELL,
CHRISTOPHER BELL,
RACHEL BELL and
WILLIAM BELL,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure" (Doc. No. 21, filed Feb. 18, 2014) and "Plaintiff's Motion for Leave to File an Amended Complaint" (Doc. No. 39, filed Mar. 17, 2014). For the following reasons, the court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED and Plaintiff's Motion to Amend be DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2010, Plaintiff Khaled Alattar conceived the idea for LuxeYard, an online purveyor of luxury goods that follows the "flash sale" retail model. (Am. Compl, Doc. No. 13, ¶ 9.) Plaintiff partnered with a business associate, Amir Mireskandari, to form LY Retail LLC and

develop Plaintiff's idea; the domain name www.luxeyard.com was eventually incorporated in May 2011.  (*Id.*)

In August 2011, Plaintiff and Mireskandari recognized that LY Retail needed additional capital to become fully operational and for future growth.  (*Id.* ¶ 10.)  As such, Plaintiff and Mireskandari approached non-parties Frederick Huttner and Kevan Casey, who laid out a plan to convert LY Retail into a publicly traded company through a reverse merger.[1]  (*Id.*)  Through this reverse merger, LY Retail was to be acquired by Top Gear, a publicly traded "shell" company.  (*Id.* ¶ 11-12.)  Allegedly, unbeknownst to Plaintiff, Casey and Huttner's true plan was not to finance LuxeYard's operations and future growth, but instead to use LuxeYard to engage in an illegal "pump and dump" scheme.  (*See id.* ¶ 12.)

The reverse merger was executed on November 8, 2011.  (*Id.* ¶ 18.)  Shortly thereafter, Casey and Huttner allegedly financed and executed an aggressive marketing campaign to

---

[1] The Securities and Exchange Commission describes a reverse merger as follows:

> In a reverse merger transaction, an existing public "shell company," which is a public reporting company with few or no operations, acquires a private operating company.  Typically, the shareholders of the private operating company exchange their shares for a large majority of the shares of the public company. Although the public shell company survives the merger, the private operating company's shareholders gain a controlling interest in the voting power and outstanding shares of stock of the public shell company.  Also typically, the private operating company's management takes over the board of directors and management of the public shell company.  The assets and business operations of the post-merger surviving public company are primarily, if not solely, those of the former private operating company.

U.S. SEC, *Investor Bulletin: Reverse Mergers*, available at www.sec.gov/investor/alerts/reversemergers.pdf (last visited May 21, 2014).

artificially inflate, or "pump," the price of Top Gear/LuxeYard's stock.[2] (*Id.* ¶ 20.) Casey, Huttner, and other "affiliates"[3]—including the defendants named in this case—then allegedly sold, or "dumped," a large volume of supposedly unrestricted Top Gear/LuxeYard shares that Plaintiff alleges should have been sale-restricted. (*Id.*) Following this sell-off, Top Gear/LuxeYard's stock price plummeted from a high of over $2.00 per share to $.10 per share. (*Id.*)

Defendants Aaron, Christopher, William, and Rachel Bell are Huttner's stepchildren. (*Id.* ¶¶ 28, 49.) Plaintiff asserts state law conspiracy, aiding and abetting, and unjust enrichment claims against Defendants for their alleged involvement in the "pump and dump" scheme perpetrated principally by Casey, Huttner, and other "affiliates." (*Id.* ¶¶ 48-56.) Specifically, Plaintiff alleges that Defendants (1) knew that Top Gear/LuxeYard was the target of a "pump and dump" scheme, (2) received 151,500 shares (approximately 47,000 shares each) of Top Gear/LuxeYard stock from Huttner, and then (3) sold those Top Gear/LuxeYard shares between late April and early June 2012, when the price of Top Gear/LuxeYard's stock was artificially inflated. (*Id.* ¶ 28.) Casey, Huttner, and a number of their other affiliates have been named as Defendants in a related Texas state court case.[4] (*Id.* ¶ 5.)

---

[2] It appears that Top Gear, Inc. is now known as LuxeYard, Inc. (*See* Am. Compl. ¶¶ 5, 21(v).) Nevertheless, the court cautiously refers to the company established through the reverse merger as "Top Gear/Luxeyard."

[3] These other "affiliates" include a number of individuals and companies named as defendants in the related Texas state court litigation. (*See* Am. Compl. ¶ 5.) A discussion of the roles played by these other "affiliates" is not included herein as it is not necessary for resolving Defendants' Motion to Dismiss.

[4] *Allatar v. Casey, et al,* Case No. 2012-54501, filed September 18, 2012 in the 113th Judicial District Court of Harris County, TX. (Am. Compl. ¶ 5 n.2.)

Defendants' Motion to Dismiss argues that Plaintiff lacks standing to pursue his claims against Defendants and, that Plaintiff's claims fail to state a claim for relief. (*See generally* Mot. Dismiss.) After receiving an extension of time (*see* Minute Order, Doc. No. 32), Plaintiff file his Response to Defendants' Motion to Dismiss on March 21, 2014 (Doc. No. 47 [Resp. Mot. Dismiss]). Defendants' Reply was filed on April 4, 2014 (Doc. No. 51 [Reply Mot. Dismiss]).

Plaintiff's Motion to Amend was filed on March 17, 2014. (*See* Mot. Am.) Defendants' Response was filed on April 7, 2014 (Doc. No. 52 [Resp. Mot. Am.]) and Plaintiff's Reply was filed on April 9, 2014 (Doc. No. 53 [Reply Mot. Am.]).

Accordingly, these motions are ripe for the court's review and recommendation.

## LEGAL STANDARDS[5]

*A.    Standing*

The doctrine of standing concerns a litigant's right to bring a cause of action. *Developmental Pathways v. Ritter*, 178 P.3d 524, 530 (Colo. 2008). The question of standing is jurisdictional in nature and is reviewed under Rule 12(b)(1). *Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). Rule 12(b)(1) challenges are generally made in two ways. The moving party may: (1) facially attack the allegations regarding subject matter jurisdiction; or (2) go beyond allegations in the complaint by presenting evidence to challenge the basis for subject matter jurisdiction. *Merrill LynchBus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). The court must accept the allegations in the complaint as true when resolving a facial attack regarding subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.

---

[5] Because the court finds that Plaintiff lacks standing, it does not address Defendants' alternative argument that Plaintiff fails to state a claim for relief. As such, the court has not included the legal standard governing dismissal under Fed. R. Civ. P. 12(b)(6) herein.

1995). On the other hand, when considering evidence attacking the basis for subject matter jurisdiction, the court may review this evidence without converting the motion to a summary judgment motion. *See SK Finance SA v. La Plata Cnty.,* 126 F.3d 1272, 1275 (10th Cir. 1997). Ultimately, in either case, the plaintiff has the burden of demonstrating subject matter jurisdiction because the plaintiff is the party asserting jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

In diversity jurisdiction cases, the Supreme Court has stated that, as a general matter, "jurisdiction is tested by the facts as they existed when the action is brought." *Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957). In a case grounded in federal question jurisdiction, the Supreme Court also stated that "the plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course." *Gollust v. Mendell*, 501 U.S. 115, 126 (1991) *accord City Commc'ns, Inc. v. City of Detroit*, 888 F.2d 1081, 1086 (6th Cir. 1989) ("A plaintiff must maintain standing throughout all stages of his litigation."). The Tenth Circuit has adopted this view. *Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1484 (10th Cir. 1995). Standing is a limitation on a court's jurisdiction. *See Am. Postal Workers Union v. United States*, 861 F.2d 211, 213 (9th Cir.1988). When a plaintiff no longer has an injury, the Article III requirements of a case or controversy are no longer met; therefore "a plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction." *Powder River Basin Res. Council*, 54 F.3d at 1484.

In general, constitutional standing to bring suit involves three (3) elements. "First, the plaintiff must have suffered a concrete, actual 'injury in fact.' Second, there must be a causal connection between the injury and the conduct at issue. Third, it must be likely that a favorable

decision will redress the plaintiff's injury." *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 793 (10th Cir. 2009) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### B.     *Amendment of Pleadings*

Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a).  The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48 (1957) *abrogated on other grounds by Twombly*, 550 U.S. 544.

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Thus, although Rule 15(a) provides that leave to amend shall be given freely, the court may deny leave to amend where amendment would be futile. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999).  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason.  *Id.*; *Watson ex rel. Watson,* 242 F.3d 1237, 1240-41 (10th Cir. 2001).

## ANALYSIS

*A.     Standing*

Defendants argue that Plaintiff lacks standing to assert his claims because the harm from Defendants' alleged actions, if any, was sustained by Top Gear/LuxeYard, not Plaintiff. The court agrees.

As an initial matter, while Defendants cites to both Texas and Colorado law, neither party has directly addressed which state's substantive laws govern in this action. "In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims." *Haberman v. Hartford Ins. Grp.,* 443 F.3d 1257, 1264 (10th Cir. 2006). The forum state's substantive law includes choice of law rules. *Elliot v. Turner Const. Co.,* 381 F.3d 995, 1001) (10th Cir. 2004). However, unlike jurisdictional issues, choice of law issues need not be raised *sua sponte*. *Western Heritage Bank v. Fed. Ins. Co.,* 557 F. App'x 807, 812 (10th Cir. 2014) (citing *Flying J Inc. v. Comdata Network, Inc.,* 405 F.3d 821, 831 n.4 (10th Cir. 2005)). As a result, the court assumes that Colorado law applies and, therefore, looks to Colorado substantive law to determine whether Plaintiff has standing to pursue his claims. *See id.* (applying the forum state's substantive New Mexico law because the parties did not contest its applicability to the at-issue contract).

Under Colorado law, "as a general rule, a stockholder cannot maintain a personal action against a director or other third party whose action causes harm to the corporation. Generally, it is the corporation, or a stockholder in a derivative action . . . , who must pursue such a claim." *Nicholson v. Ash,* 800 P.2d 1352, 1356 (Colo. App. 1990) (citing *Box v. Roberts,* 148 P.2d 810 (Colo. 1944); *A.R.A. Mfg. Co. v. Cohen,* 654 P.2d 857 (Colo. App. 1982)). This is because, "it is

the corporation that has suffered direct injury, and any damage resulting to the stockholder is merely indirect; such damage is normally reflected only in the decreased value of his stock."[6] *Id.* As such, "a stockholder may maintain a personal action in his capacity as a stockholder only if the actions of the third party that injure the corporation result from a violation of a duty owed to him as a stockholder and that cause him injury as a stockholder, unique to himself and not suffered by the other stockholders." *Id.* at 1357 (citing *Security Nat'l Bank v. Peters, Writer & Christensen, Inc.,* 569 P.2d 875 (Colo. 1977).

This general rule applies even when the corporation is closely-held. *Combs v. PriceWaterhouse Coopers LLP,* 382 F.3d 1196, 1200 (10th Cir. 2004) (citing *River Mgmt. Corp. v. Lodge Props. Inc.,* 829 P.2d 398,404 (Colo. App. 1991)). Further, it is Plaintiff's burden to show that an exception to this general rule confers him with standing to pursue his claims. *Id.* at 1201-1202 ("If he can demonstrate an exception to the general rule, then [plaintiff] may pursue his . . . claims in his individual capacity.").

The court finds that the general rule applies in this case. Plaintiff's claims against Defendants are premised on allegations that Defendants knew of Huttner and Casey's scheme to "pump and dump" Top Gear/LuxeYard's stock and participated in, or aided and abetted, this scheme by selling the Top Gear/LuxeYard shares they received from Huttner once their price was artificially inflated. (Am. Compl. ¶ 28.) Notably, Plaintiff damages from Defendants' actions include "the loss of what his interest in LuxeYard would have been worth but for the

---

[6] In addition, this general rule (1) "prevents a multiplicity of suits by the various stockholders and assures that the corporation will be bound by the result of the litigation," and (2) assures that "any proceeds resulting from the litigation will be treated as corporate assets." *Nicholson,* 800 P.2d at 1356.

8

destruction of its market value as a direct and proximate result of the 'pump and dump' scheme in which the Bell Defendants participated and conspired."[7] (Compl. ¶ 48.) This injury is not different or unique from the injury suffered by other Top Gear/LuxeYard stockholders. *See Nicholson,* 800 P.2d at 1356 (decreased value of stock is not a unique injury).

Furthermore, Plaintiff utterly fails to satisfy his burden of showing an exception to the general rule that a stockholder cannot sue for injury to the corporation. In the body of his Response, Plaintiff merely recites the elements of standing without making any effort to show how those elements are satisfied on the facts of this case. (Resp. Mot. Dismiss at 3.) Plaintiff also argues, in a footnote, that a Texas case relied on by Defendants, *Wingate v. Hajdik,* 795 S.W.2d 717 (Tex. 1990), "clearly recognizes that a shareholder has a right to bring a personal

---

[7]   Plaintiff also seeks damages from Defendants for "the loss of his initial investment in LuxeYard." Am. Compl. ¶ 48.) The court assumes that Plaintiff intended to refer to his initial investment in *LY Retail*, as it does not appear that Plaintiff invested in Top Gear/LuxeYard at the time of or after the reverse merger.

According to Plaintiff's allegations, however, Defendants only became involved in the alleged "pump and dump" scheme upon acquiring and then selling their Top Gear/LuxeYard shares. (*See id.* ¶ 28.) Even assuming Plaintiff may be able to assert claims against Huttner and Casey directly for fraudulently inducing him to sell his ownership interest in LY Retail to Top Gear (*see id.* ¶14), Plaintiff has failed to submit any Colorado case law holding that Defendants can be held liable for damages arising out of the reverse merger. Indeed, Plaintiff does not allege that Defendants knew and approved of the fraudulently-induced reverse merger at the time they entered the conspiracy. *Cf. Van Winkle v. Owens-Corning Fiberglas Corp.,* 291 683 N.E.2d 985, 992 (Ill. App. 1997) (a late joining conspirator may be liable for the prior tortious acts of its coconspirators only when they join a preexisting civil party "with *knowledge and approval* of the prior acts of its coconspirators) (emphasis in original); *Havaco of Am. v. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir. 1980 ("a co-conspirator who joins a conspiracy, *with knowledge of what has gone on before* and with an intent to pursue the same objectives" may be held responsible for the prior acts of its coconspirators) (emphasis added). Nor has Plaintiff submitted any authority suggesting that such knowledge is not required for Defendants to be held liable for Huttner and Casey's earlier acts. *See also Nelson v. Elway,* 908 P.2d 102, 106 (Colo. 1995) (proximate cause is an element of a civil conspiracy claim). As a consequence, Plaintiff has failed to sustain his burden of demonstrating an exception to the general rule that a stockholder cannot maintain a personal action against a third party for injuries to the corporation. *Nicholson*, 800 P.2d at 1356.

cause of action for breaches of duty owed directly to the shareholder." (*Id.* at 3 n.3.) However, Plaintiff again makes no effort to demonstrate how that exception applies on the facts of this case. Accordingly, the court finds that Plaintiff has failed to demonstrate that he has standing to directly pursue his claims against Defendants.

### B.     *Motion to Amend*

The court also finds that Plaintiff's proposed Second Amended Complaint fails to cure deficiencies of the Amended Complaint with respect to Plaintiff's standing. As discussed above, "the court may deny leave to amend where the proposed amendment would be futile." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993); *Bauchman ex rel Bauchman v. W. High Sch.,* 132 F.3d 542, 562 (10th Cir. 1997) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason.").

Plaintiff seeks leave to amend his Amended Complaint in order to assert an additional claim alleging that Defendants were acting as agents for Huttner. (Mot. Am. ¶ 1.) As a consequence, the new factual allegations featured in Plaintiff's proposed Second Amended Complaint assert that Defendants acted as Huttner's agents because they (1) opened *new* trading accounts to deposit their Top Gear/LuxeYard stock with Huttner's broker so that he could decide, whether, when, and how much to sell; and (2) all sold their stock at the same time suggesting it was one person, Huttner, deciding whether, when, and how much to sell. (Doc. No. 39-1 ¶¶ 58-59). However, even assuming the truth of these allegations, they do not alter the fact that the injury Plaintiff suffered as a result of Defendants' actions was not unique from the injury suffered by other Top Gear/LuxeYard shareholders. As such, Plaintiff's proposed Second

10

Amended Complaint does not remedy the deficiencies with respect to Plaintiff's standing to pursue his claims.

Altogether, Plaintiff's Amended Complaint and proposed Second Amended Complaint fail to demonstrate that Plaintiff has standing to pursue his claims against Defendants. Therefore, the court finds that Defendants' Motion to Dismiss is properly granted and Plaintiff's Motion to Amend is properly denied.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure" (Doc. No. 21) be GRANTED, that "Plaintiff's Motion for Leave to File an Amended Complaint" (Doc. No. 39) be DENIED, and that Plaintiff's Amended Complaint (Doc. No. 13) be DISMISSED without prejudice for lack of standing.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of August, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge