IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02990–MSK–KMT


LUXEYARD, INC.,

      Intervenor Plaintiff,

v.

AARON BELL,
CHRISTOPHER BELL,
RACHEL BELL and
WILLIAM BELL,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendants' Motions to Dismiss LuxeYard, Inc.'s

Complaint in Intervention pursuant to Fed. R. Civ. P. 12(b)(6)."  (Doc. No. 65, filed June 20,

2014)[1]  For the following reasons, the court RECOMMENDS that Defendants' Motion to

Dismiss be GRANTED in part and DENIED in part.

---

[1] Defendants filed under restriction a second motion to dismiss featuring the same title.  (Doc.
No. 66.)  That motion, which argues that LuxeYard, Inc.'s Complaint in Intervention should be
dismissed pursuant to a confidential Settlement Agreement and Mutual Release, will be
addressed by a separate Recommendation.

## FACTUAL BACKGROUND

The following factual background is derived from LuxeYard, Inc.'s Complaint in Intervention.  (Doc. No. 58 [Compl.])[2]

In April 2011, Amir Mireskandari and Khaled Alattar formed LY Retail, LLC to operate a website called LuxeYard.com.  (Compl. ¶ 14.)  LuxeYard.com was established to sell high-end luxury items through a "flash sale" retail model.  (*Id.*)

Shortly after establishing LY Retail, Mireskandari and Alattar recognized that they needed to raise additional capital.  (*Id.* ¶¶ 15-16.)  In August 2011, Mireskandari spoke with non-party Fredrick Huttner, who arranged a meeting with Kevan Casey, who was purported to be a professional investor.  (*Id.* ¶ 18.)

Casey proposed to raise the necessary capital by turning LY Retail and LuxeYard.com into a public entity through a reverse merger.[3]  (*Id.*)  Unbeknownst to Mireskandari, Casey's

---

[2] Although the court has previously set forth a factual background of the pump and dump scheme at issue in this case, (*see* Recommendation of United States Magistrate Judge, Doc. No. 83), it nevertheless provides this factual background to mirror the allegations of LuxeYard's Complaint in Intervention, rather than the Complaint filed by former Plaintiff Khaled Alattar.

[3] The Securities and Exchange Commission describes a reverse merger as follows:

In a reverse merger transaction, an existing public "shell company," which is a public reporting company with few or no operations, acquires a private operating company. Typically, the shareholders of the private operating company exchange their shares for a large majority of the shares of the public company.  Although the public shell company survives the merger, the private operating company's shareholders gain a controlling interest in the voting power and outstanding shares of stock of the public shell company. Also typically, the private operating company's management takes over the board of directors and management of the public shell company. The assets and business operations of the post-merger surviving public company are primarily, if not solely, those of the former private operating company.

actual plan was not to finance LY Retail and LuxeYard.com's operations and future growth, but instead to facilitate an illegal "pump and dump" scheme.  (*Id*.)

To accomplish the reverse merger, Casey assembled a group of investors to purchase all outstanding shares of a company called "Top Gear," a Delaware corporation with no revenue and limited operation.  (*Id*. ¶¶ 23-25.)  After the reverse merger was accomplished, Top Gear then changed its name to LuxeYard, Inc.  (*Id*. ¶ 42.)

LuxeYard maintains that the stock obtained through the Top Gear/LY Retail reverse merger should have been restricted from public trading under Securities Exchange Commission (SEC) Rule 144, 17 C.F.R. § 230.144.  (*Id*. ¶ 13.)  However, Globex, Defendants' alleged transfer agent, obtained false opinion letters from the law firm, Anslow & Jaclin, that would have the effect of making the Top Gear/LuxeYard stock "unrestricted."  (*Id*. ¶¶ 30-31.)  Globex also had Top Gear's previous president, Omar Shalom, sign the document even though he was no longer president of, or otherwise associated with, Top Gear.  (*Id*. ¶ 33.)

In late February or early March 2012, Huttner provided a portion of the shares he received from the purchase of Top Gear to his children, including Defendants Aaron, Christopher, Rachel, and William Bell.  (*Id*. ¶¶ 35-36.)  Shortly thereafter, Casey and Huttner allegedly financed and executed a complicated marketing campaign to artificially inflate, or "pump," the price of LuxeYard, Inc.'s stock.  (*Id*. ¶¶ 43-59.)  As part of this campaign, LuxeYard alleges that Defendants engaged in "matched orders"[4] for the purpose of increasing

---

U.S. SEC, I*nvestor Bulletin: Reverse Mergers*, available at www.sec.gov/investor/alerts/reversemergers.pdf (last visited Jan.9, 2015).

[4] According to LuxeYard, matched orders are coordinated transactions in which an order for the sale of stock is entered with knowledge that a coordinate buy order has been entered at

the trading volume of LuxeYard stock, thereby increasing the price and making the stock more attractive to other potential buyers.  (*Id.* ¶¶ 47-52.)  With the money obtained from these matched orders, Casey, Huttner, and their "co-conspirators" were able to raise millions of dollars to promote LuxeYard's stock.  (*Id.* ¶ 52.)

Casey, Huttner, and their "co-conspirators" then engaged in a "sham mass-marketing campaign," through spam e-mails, direct mailers, blogs, and websites, touting LuxeYard as the next Facebook, ensuring potential invesors that LuxeYard's stock price would soar, and claiming that investors would reap great financial reward if they invested while the price was still relatively low.  (*Id.* ¶¶ 52-53.)  These marketing materials never disclosed that there would be a coordinated, mass selling of the stock.  (*Id.* ¶ 54.)  Casey, Huttner and their "co-conspirators"[5] also undertook "gypsy swaps"[6] in order to continue "investing" in LuxeYard, in order to keep LuxeYard functioning until their pump and dump scheme was fully implemented.  (*Id.* ¶¶ 56.)

In the first few weeks of April 2012, after the price of LuxeYard's stock was inflated, the investors who originally financed the purchase of Top Gear sold their LuxeYard shares.  (*Id.* ¶ 67.)  Then, after April 16, 2012, Casey, Huttner, and Defendants Aaron, Christopher, Rachel, and William Bell started selling their shares in a coordinated manner.  (*Id.* ¶ 68.)  Plaintiff alleges that Defendants all sold their shares within six months of acquisition.  (*Id.* ¶ 69.)

---

substantially the same quantity and price, with the expectation that the orders will execute against each other.

[5] LuxeYard's Complaint in Intervention never defines which individuals are included among Casey and Huttner's "co-conspirators."

[6] LuxeYard's Complaint in Intervention does not define a "gypsy swap," nor is it otherwise apparent to the court from the allegations how a "gypsy swap" works.  Further, the court's research of caselaw does not reveal any definition of a "gypsy swap."

From April 1 to August 1, 2012, Casey, Huttner, and other "co-conspirators" allegedly received in excess of $30 million in total revenue from the pump and dump scheme involving LuxeYard, Inc. (*Id.* ¶ 70.)  Of this, Plaintiff alleges that Defendants Aaron, Christopher, Rachel, and William Bell received profits of approximately $250,000.  (*Id.* ¶ 71.)

## PROCEDURAL HISTORY

This action was originally commenced on October 31, 2013, when former Plaintiff Khaled Alattar filed his Complaint.  (Doc. No. 1.)  Defendants filed a motion to dismiss Alattar's Complaint on February 18, 2014.  (Doc. No. 21.)  Alattar subsequently filed a Motion to Amend his Complaint on March 17, 2014.  (Doc. No. 39.)

On March 20, 2014, LuxeYard filed a Motion to Intervene.  (Doc. No. 43.)  The court granted LuxeYard's Motion to Intervene on May 30, 2014, and LuxeYard's Complaint in Intervention was filed the same day.  (Doc. No. 53; Compl.)

Defendants filed their Motion to Dismiss on June 20, 2014.  (*See* Mot. Dismiss.)  LuxeYard filed its Response on July 11, 2014 (Doc. No. 72), and Defendants filed their Replies on July 25, 2014 (Doc. No. 76).

On August 21, 2014, this court entered a Recommendation that Defendants' Motion to Dismiss Alattar's Complaint be granted, and that Alattar's Motion to Amend his Complaint be denied.  (Doc. No. 83.)  Chief Judge Marcia S. Krieger adopted the Recommendation as an order of the court and entered final judgment against Alattar pursuant to Fed. R. Civ. P. 54(b).  (*See* Doc. Nos. 88, 89, & 91.)  Accordingly, only LuxeYard's claims remain pending.

LuxeYard's Complaint in Intervention asserts four claims for relief: a claim for disgorgement of "short swing" profits realized by Defendants, pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b); and three state law claims for civil conspiracy, aiding and abetting, and unjust enrichment, respectively.  Defendants moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two prongs of analysis.

First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 680. Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp*., 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint

may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

## ANALYSIS

### A.    *Section 16(b) Claim*

Defendants argue that LuxeYard's Section 16(b) claim is properly dismissed because the LuxeYard's allegations are insufficient to establish a claim for relief under Section 16(b). Defendants also argue that LuxeYard's Section 16(b) claim is barred in part by the applicable statute of repose.  The court addresses these arguments in turn.

#### 1.    *Failure to State a Claim for Relief*

Defendants argue that LuxeYard's Complaint in Intervention fails to state a claim under Section 16(b) claim because the Complaint in Intervention fails to sufficiently allege that (1) Defendants sold their LuxeYard shares within 6 months of their purchase, and (2) Defendants were part of a group that purportedly owned more than 10% of LuxeYard stock.  The court disagrees.

Section 16(b) imposes a general rule of strict liability on directors, officers, or beneficial owners of more than 10 percent of a corporation's stock for any profits realized from the purchase and sale, or sale and purchase, of such stock occurring within a 6-month period.[7]

---

[7] The text of Section 16(b) reads in full:

> For the purpose of preventing the unfair use of information which may have been
> obtained by such beneficial owner, director, or officer by reason of his relationship to the

*Gollust v. Mendell,* 501 U.S. 115, 116-117 (1991).  To establish a claim under Section 16(b), a plaintiff must allege (1) a purchase and (2) sale of non-exempt equity securities or derivative securities (3) by an insider of the issuer (4) within a less than six-month period (5) resulting in profit.  *Chechele v. Ward,* No. CIV-10-1286-M, 2011 WL 1405244, at *3 (W.D. Okla. April 13, 2011) (citing *Gwozdzinsky v. Zell/Chilmark Fund, L.P.,* 156 F.3d 305, 308 (2d Cir. 1998)).

The court first finds that LuxeYard sufficiently alleges that Defendants sold their LuxeYard stock within six months of their purchase.  LuxeYard alleges that Defendants obtained their shares from Huttner in late February or early March 2012 (Compl. ¶ 36), and, after April 16, 2012, began selling their shares in a coordinated manner (*id.* ¶ 67).  Further, LuxeYard alleges that "[f]rom April 1 to August 1, 2012, Casey Huttner and their co-conspirators[8] received

issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.  Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.  This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

15 U.S.C. § 78p(b).

[8] Although this allegation does not specifically identify Defendants as Casey and Huttner's "co-conspirators, it is reasonable to infer as much from the next paragraph, which alleges that "Defendants Aaron Bell, Christopher Bell, Rachel Bell and William Bell received profits of approximately $250,000."  (Compl. ¶ 71.)

in excess of $30 million in total revenues from their pump and dump operation." (*Id.* ¶ 70.) The reasonable inference from this allegation is that the sale or "dump" of LuxeYard shares concluded on or before August 1, 2012— i.e., within six months after Defendants acquired their LuxeYard shares in late February or early March 2012. As such, the court finds that LuxeYard has alleged sufficient facts to support its allegation that "Defendants Aaron Bell, Christopher Bell, Rachel Bell and William Bell all sold their shares within six months of acquisition." (*Id.* ¶ 69.)

The court also finds that LuxeYard sufficiently alleges that Defendants were a part of a group owning more than 10% of LuxeYard stock. Section 16(b) identifies three classes of "insiders" whose profits on short-swing trades are subject to disgorgement: directors, officers, and beneficial owners," the last of which is defined as a 'person' holding 10% of the issuing corporation's securities. *Dreiling v. Am. Online, Inc.,* 578 F.3d 995, 1001 (9th Cir. 2009) (citing *Dreiling v. Am. Express Co.,* 458 F.3d 942, 947 (9th Cir. 2006)); 15 U.S.C. § 78p(a)); *see also Tristar Copr. v. Freitas,* 84 F.3d 550, 552-53 (2d Cir. 1996). SEC Rule 16a-1(a)(1)(2) clarifies how to identify a beneficial owner: "the term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the [Securities Exchange] Act and the rules thereunder." 17 CFR § 240.16a-1. In turn, Section 13(d) provides, *inter alia:* "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." 15 U.S.C. § 78m(d)(3). To implement Section 13(d)(3), the SEC promulgated Rule 13d-5. *See Morales v. Quintel*

*Entm't,* 249 F.3d 115, 123 (2d Cir. 2001). Rule 13d-5 defines beneficial ownership by a group as follows:

> When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons.

17 C.F.R. § 240.13d-5(b)(1). Thus, the inquiry is whether Defendants agreed to act with other individuals holding LuxeYard stock to acquire, hold, or dispose of equity securities. *Morales,* 249 F.3d at 123-24. The agreement to act together may be informal and may be inferred from circumstantial evidence. *Id.*

Here, LuxeYard's Complaint in Intervention alleges that Defendants acquired their shares through Huttner (Compl. ¶¶ 35-36), their step-father and one of the primary "players" in the pump and dump scheme, and then sold their shares—either through Huttner or, alternatively, at his direction (*id.* ¶¶ 36-37)—at or around the same time as a number of the other conspirators in the pump and dump scheme (*id.* ¶¶ 67-68). The court finds that these allegations, if proven true, constitute circumstantial evidence raising a plausible inference that Defendants were part of an informal agreement to dispose of their shares in a coordinated manner. *See also Rosen v. Brookhaven Cap. Mgmt. Co.,* 113 F. Supp. 2d 615, 632 (S.D.N.Y. 2000) (reasoning that because it is difficult to ascertain a group's true plans and purpose, granting a Rule 12(b)(6) motion to dismiss before meaningful discovery has occurred "could create a safe haven for groups to conceal their real purposes").

In addition, LuxeYard alleges that, save for the shares that were issued to Mireskandari and Alattar in exchange for Top Gears' acquisition of LYRetail (Compl. ¶ 42), Casey and the other investors who originally purchased Top Gear controlled and owned 100% of Top Gear shares (*id.* ¶ 27), which later became shares in LuxeYard.  The court finds that this is sufficient to raise a plausible inference that the group of alleged conspirators in the pump and dump scheme, including Defendants, owned 10% or more of LuxeYard's stock.

### 2.    *Untimeliness*

Section 16(b) bars claims for disgorgement of short-swing profits brought more than two years after the date such profits were realized.  15 U.S.C. § 78p(b) ("no such suit [under § 16(b)] shall be brought more than two years after the date such profit was realized."). [9]  Defendants maintain that LuxeYard cannot seek to disgorge profits realized prior to May 30, 2012 because LuxeYard's Complaint in Intervention was not filed until May 30, 2014.

The court disagrees.  "[A] motion to intervene which set forth the cause of action sought to be asserted, or which has attached thereto a copy of the proposed complaint, is sufficient compliance with the statute of limitations, if such motion is properly filed prior to the running of the statute, and properly served on defendant(s) without delay."  *Jack v. Travelers Ins. Co.,* 22

---

[9] It is unclear whether Section 16(b)'s prohibition on actions brought more than two years after the date profit was realized on a short-swing trade constitutes a statute of repose, which cannot be equitably tolled, or a statute of limitations, which is subject to equitable tolling.  *Compare Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 360 n.5 (1991) (stating, in dictum, that Section 16(b) features a 2-year "period of repose") *with Credit Suisse Sec. (USA) LLC v. Simmonds,* --- U.S. ----, 132 S.Ct. 1414, 1421 (2012) (affirming, without precedential effect, the Court of Appeal's conclusion that Section 16(b) does not establish a period of repose that is not subject to tolling because the Court was divided 4 to 4 on that issue).  The court need not resolve this issue as it finds that LuxeYard's claims are not untimely under Section 16(b).

F.R.D. 318, 319 (E.D. Mich. 1958); *see also Farris v. Sears, Roebuck & Co.,* 415 F. Supp. 594, 596 (D. Ky. 1976) (concluding that holding otherwise would require a proposed intervenor to speculate or hope that the court would rule upon the motion to intervene before a statute of limitations or other time limitation expires); *Braxton v. Va. Folding Box Co.,* 72 F.R.D. 124, 126 (D.C. Va. 1976).  Here, LuxeYard's Motion to Intervene was filed on March 20, 2014—less than two years after Defendants allegedly sold their LuxeYard shares between April 16 and August 1, 2012.

To be sure, LuxeYard's Motion to Intervene arguably did not comply with Fed. R. Civ. P. 24(c) because it was not "accompanied by a pleading that sets out the claim or defense for which intervention is sought."  More specifically, instead of attaching a copy of its Complaint in Intervention to its Motion to Intervene, LuxeYard provided a copy of a pleading it filed in a related Texas state court case, and stated in its Motion to Intervene that, if granted leave to intervene, it would file a complaint similar to the Texas state court pleading.  (Mot. Intervene at 3; Ex. A.)

Nevertheless, in granting LuxeYard's Motion to Intervene, the court elected to overlook LuxeYard's technical non-compliance with Rule 24(c) because LuxeYard attached its Complaint in Intervention to its Reply in support of its Motion to Intervene and the Complaint in Intervention featured the exact same claims featured in the Texas state court pleading.  (Order re: Mot. Intervene at 4-5.)  As such, the court found that Defendants received adequate notice of the claims LuxeYard sought to seek upon intervention.  (*Id.* at 5.)  Therefore, because LuxeYard's Motion to Intervene set forth the causes of actions sought to be asserted upon intervention, the

court finds that March 20, 2014, the date LuxeYard filed its Motion to Intervene, constitutes the "commencement of [the] action" for purposes of determining whether its claims are barred by the applicable limitations period. *Braxton,* 72 F.R.D. at 126. Further, because LuxeYard alleges that Defendants sold their LuxeYard shares between April 16 and August 1, 2012 (Compl. ¶¶ 67, 70), the court finds that LuxeYard's Complaint in Intervention is timely.

Altogether, the court finds LuxeYard's Complaint in Intervention is timely, sufficiently alleges that Defendants sold their LuxeYard shares within six months of their acquisition, and sufficiently alleges that Defendants were part of a group constituting a beneficial owner of LuxeYard. Therefore, the court finds that Defendants' Motion to Dismiss is properly denied to the extent it seeks to dismiss LuxeYard's Section 16(b) claim.

**B.      State Law Claims**

Defendants argue that LuxeYard's state law claims for civil conspiracy, aiding and abetting, and unjust enrichment all fail to state a claim for relief. The court agrees.

   **1.      Civil Conspiracy Claim**

To establish a civil conspiracy in Colorado,[10] a plaintiff must allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989). "In a civil action, conspiracy is a derivative cause of action that is not actionable *per se*." *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l,*

---

[10] Because the parties have not raised any choice of law issues, the court applies Colorado law to LuxeYard's state law claims. *W. Heritage Bank v. Fed. Ins. Co.,* 557 F. App'x 807, 812 (10th Cir. 2014) (citing *Flying J. Inc. v. Comdata Network, Inc.,* 405 F.3d 821, 831 n.4 (10th Cir. 2005)).

*L.L.C.*, 97 P.3d 140, 146 (Colo.App.2003) (citing *Morrison v. Goodspeed,* 68 P.2d 458 (1937);

*Pullen v. Headberg,* 127 P. 954 (1912)).  "[T]he essence of a civil conspiracy is not the

conspiracy itself, but the actual damages resulting from the acts done in furtherance of the

conspiracy."  *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1055 (Colo. 1995) *accord*

*Farmland Indus. v. Frazier–Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir.1989)

("[T]he 'doctrine of civil conspiracy extends liability for tort . . . to persons other than the actual

wrongdoer . . . but it is the acts causing damage to the plaintiff that give rise to liability for

damages, not the conspiracy itself.' ").  In other words, "it is [the] wrongful acts, not the mere

existence or continuation of a conspiracy, that injure the plaintiff."  *Sterenbuch v. Goss*, 266 P.3d

428, 435 (Colo. App. 2011).  Thus, if the acts alleged to constitute the underlying wrong provide

no cause of action, then there is no cause of action for the conspiracy itself.  *Double Oak Const.,*

97 P.3d at 146 (citing *Jet Courier Serv.,* 771 P.3d 486).

        LuxeYard's civil conspiracy claim is asserted as a "conspiracy to commit fraud," and

alleges wrongful acts including both fraudulent misrepresentation and fraudulent nondisclosure.

To state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) a false

representation of a material existing fact; (2) knowledge on the part of the one making the

representation that it is false; (3) ignorance on the part of the one to whom the representation is

made of the falsity; (4) that the representation was made with the intention that it be acted upon;

and (5) damage caused by the representation."  *Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1361

(Colo. 1993) (citing *Kinsey v. Preeson,* 746 P.2d 542, 550 (Colo. 1987)).  Similarly, the elements

of fraudulent concealment or nondisclosure are: (1) the defendant failed to disclose a past or

present fact that he or she had a duty to disclose; (2) with intent to induce the plaintiff to take a course of action he or she would not otherwise have taken; and (3) that the plaintiff justifiably relied on the omission.  *Cent. Masonry Corp. v. Bechtel Nat'l, Inc.,* 857 F. Supp. 2d 1160, 1163 (D. Colo. 2012) (citing *Wisehart v. Zions Bancorporation,* 49 P.3d 1200, 1204 (Colo. App. 2002)).

In addition, because LuxeYard's civil conspiracy claim is based on wrongful acts constituting fraud, it is subject to Federal Rule of Civil Procedure 9(b).  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 387 F. Supp. 2d 1130, 1153 (D. Colo. 2005).  More specifically, Rule 9(b) requires that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud."  The Tenth Circuit has interpreted this to mean that a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000) (citation and quotation marks omitted).

### a.      *Whether Defendants Committed Any Fraudulent Acts*

As an initial matter, to the extent that LuxeYard seeks to establish that Defendants themselves engaged in fraudulent acts, which might be sufficient to establish that they agreed to the overall conspiracy, the Complaint does not meet Rule 9(b)'s heightened pleading requirements.  First, LuxeYard sets forth only conclusory allegations that Defendants themselves engaged in "matched orders," "wash trades," and "gypsy swaps" in order to manipulate LuxeYard stock.  (Compl. ¶¶ 47, 59, 86.)  LuxeYard's Complaint does not refer to any specific transactions executed by Defendants, let alone when those transactions occurred.

*Cf. S.E.C. v. U.S. Envtl., Inc.,* 82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000) (Rule 9(b) was met where the complaint provided "detailed descriptions of a few sample trades," and then alleged more broadly that a specific defendant executed "wash sales" and "matched orders" during a particular time frame).

Second, LuxeYard does not specifically allege that Defendants were involved in the "sham marketing campaign" intended to artificially inflate the value of LuxeYard stock.  Instead, LuxeYard alleges only that "Casey, Huttner, and their co-conspirators" were involved in the marketing campaign.  Even assuming that the allegations regarding Casey and Huttner's "co-conspirators" are intended to apply to Defendants, which is less than clear, such group pleading fails to meet the specificity required by Rule 9(b).  *Seni ex rel Ciber, Inc. v. Peterschmidt,* No. 12-cv-00320-REB-CBS, 2013 WL 1191265, at *3 (D. Colo. Mar. 22, 2013).  More specifically, without some allegations of how Defendants specifically were involved in the false marketing campaign, or what false statement can be attributed specifically to them, the requisite particularity of Rule 9(b) is not met.[11]

LuxeYard's allegations regarding the fraudulent efforts to remove the restriction on the Top Gear/LuxeYard shares also fail to establish that Defendants themselves were engaged in any

---

[11] The court notes that the Tenth Circuit's decision in *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1254 (10th Cir. 1997), is plainly distinguishable from the circumstances presented here.  There, the Tenth Circuit held that group pleading is permissible when "the fraud allegations arise from misstatements or omissions in group-published document such as annual reports, which presumably involve collective actions of corporate directors or officers."  *Id.* Here, even assuming that the sham marketing campaign was a group-published document, which is dubious, Defendants were not corporate officers or directors of LuxeYard who may be presumed to have made such statements.  As such, LuxeYard was required to identify Defendants individually as sources of the alleged fraudulent statements involved in the sham marketing campaign.

fraudulent acts.  Although LuxeYard identifies Globex as "Defendants' transfer agent" (Compl. ¶ 30), there are no factual allegations to support this relationship; nor are there any allegations to suggest that Defendants were otherwise involved in Globex's efforts to obtain allegedly false opinion letters for the purpose of removing the restriction on the Top Gear/LuxeYard shares. (*See id.* ¶¶ 30-42.)  Indeed, any such notion is largely belied by LuxeYard's admission that Defendants did not receive their LuxeYard shares until after they were unrestricted.   (*Id.* ¶¶ 34-36.)

Finally, LuxeYard alleges that Defendants engaged in fraudulent nondisclosure by failing to disclose their "coordinated dealings with each other" or that "they knew of the multi-million dollar misleading promotional campaign sent to LuxeYard stock purchasers."  (*Id.* ¶ 87.) However, even assuming that Defendants knew of the misleading promotional campaign[12]— which lacks any factual support—LuxeYard fails to allege any facts demonstrating that Defendants had a duty to disclose these facts to LuxeYard stock purchasers.  *Cent. Masonry Corp.,* 857 F. Supp. 2d at 1164; *see also Mallon Oil Co. v. Bowen/Edward Assocs., Inc.,* 965 P.2d 105, 110 (Colo. 1998) ("To succeed on a claim for fraudulent concealment or nondisclosure, a plaintiff must show that the defendant had a duty to disclose material information").  More specifically, LuxeYard does not point to any facts suggesting that Defendants, as LuxeYard shareholders, had a duty to disclose any information to other potential purchasers of LuxeYard stock.  *Compare Wisehart v. Zions Bancorporation,* 49 P.3d 1200, 1205 (Colo. App. 2002) (Corporate directors and *controlling* shareholders of a corporation have a duty

---

[12] LuxeYard alleges in only a conclusory fashion that Defendants "were aware that their father's [Huttner's] activities were illegal or violated SEC regulations."  (Compl. ¶ 40.)

to fully disclose all material facts and circumstances surrounding or affect a proposed stock transaction with a shareholder).

### b.    Whether Defendants Allegedly Agreed to the Commission of Fraudulent Acts

Having determined that LuxeYard fails to sufficiently allege that Defendants themselves engaged in fraudulent acts, the remaining question is whether LuxeYard has adequately alleged that Defendants agreed to a course of conduct of others, *i.e.*, the commission of fraudulent acts.

Although a plaintiff need not allege an express agreement, it must at the very least allege "a course of conduct and other circumstantial evidence . . . [providing] some indicia of agreement in an unlawful means or end." *Schneider v. Midtown Motor Co.,* 854 P.2d 1322, 1327 (Colo. App. 1992). The court finds that LuxeYard fails to adequately allege that Defendants agreed to a fraudulent course of conduct. The well-pleaded allegations of the Complaint in Intervention establish only that Defendants received their LuxeYard shares from Huttner , and agreed to either sell their shares, or authorized Huttner to sell their shares, in a coordinated manner with Casey, Huttner, and other "co-conspirators." (Compl. ¶¶ 35-38, 67-71.) The coordinated selling of shares alone, however, is not fraudulent, even if it amounts to a violation of Section 16(b). *See Gollust,* 501 U.S. at 116-117 (Section 16(b) imposes *strict liability* on officers, directors, or beneficial owners for short swing trades).

Ultimately, while it is conceivable that Defendants knew of and agreed to the entire pump and dump scheme—including the alleged fraudulent acts committed by Casey, Huttner, and other "co-conspirators"—the allegations of the Complaint in Intervention do not bear this out. *Twombly,* 550 U.S. at 570 (the allegations of the complaint must nudge the plaintiff's claims

across the line from "conceivable to plausible").  Instead, LuxeYard's factual allegations merely

establish that Huttner gifted LuxeYard shares to Defendants and had them sell—or sold their

shares for them—when the time was ripe.  *Id.*  This is insufficient to state a claim for a

"conspiracy to commit fraud."

Accordingly, the court finds that LuxeYard has failed to sufficiently allege a claim for

civil conspiracy against Defendants.  Therefore, the court finds that LuxeYard's civil conspiracy

claim is properly dismissed.

### 2.      *Aiding and Abetting Claim*

For reasons similar to LuxeYard's civil conspiracy claim, the court finds that LuxeYard's

aiding and abetting claim fails to state a claim for relief.  To state a claim for aiding and abetting

a tort, a plaintiff must allege:  (1) the commission of an underlying tort, (2) a defendant's

knowing participation or substantial assistance in the breach, and (3) damages.  *Holmes v. Young,*

885 P.2d 305, 308 (Colo. App. 1994); *Nelson v. Elway,* 971 P.2d 245, 250 (Colo. App. 1998)

(both addressing aiding and abetting a breach of fiduciary duty).

Here, LuxeYard alleges that Defendants "assisted or encouraged the pump and dump

perpetrators in committing their fraud upon LuxeYard and its shareholders."  (Compl. ¶ 95.)  The

Colorado Supreme Court has not addressed whether a plaintiff may assert a claim for aiding and

abetting common law fraud.  *Stat-Tech Liquidating Trust v. Fenster,* 981 F. Supp. 1325, 1339

(D. Colo. 1997).  Nevertheless, several decisions from this district have assumed such a claim is

cognizable.  *Id.*; *Sender v. Mann,* 423 F. Supp. 2d 1155, 1175-1176 (D. Colo. 2006); *Medved v.*

*DeAtley,* No. 12-cv-03034-PAB-MEH, 2013 WL 4873054, at *8 (D. Colo. Sept. 11, 2013).  A

defendant may be liable for aiding and abetting a tort if he or she "is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation." *Holmes,* 885 P.2d 305, 308 (Colo. App. 1994).

Even assuming that Defendants knew of the overall pump and dump scheme, the court finds that LuxeYard's allegations fail to establish that Defendants knowingly assisted Huttner, Casey, or the other co-cospirators in committing any fraudulent acts. As discussed above with respect to LuxeYard's civil conspiracy claim, the Complaint in Intervention is devoid of facts to suggest that Defendants participated in the efforts to unrestrict the Top Gear/LuxeYard stock; the matched orders, wash trades, and gypsy swaps; or the allegedly misleading marketing campaign. Moreover, there are no factual allegations specific to Defendants suggesting that they assisted in this fraudulent conduct. Instead, as previously discussed, the allegations of the Complaint in Intervention establish only that Defendants received shares from Huttner and sold them, or allowed Huttner to sell them on their behalf, when Huttner determined the time was right. While Defendants' sale of their LuxeYard shares may have ultimately capitalized on the fraudulent acts of others, it did not amount to knowing assistance in furtherance of those acts. Accordingly, the court finds that LuxeYard's aiding and abetting claim is properly dismissed.

### 3.      Unjust Enrichment

Finally, the court finds that Plaintiff's unjust enrichment claim is properly dismissed. To state a claim for unjust enrichment a plaintiff must allege that the defendant received a benefit (2) at the expense of the plaintiff, (3) under circumstances making it unjust for the defendant to

retain the benefit without paying for it. *Harris Group, Inc. v. Robinson,* 209 P.3d 1188, 1205

(Colo. App. 2009) (citing *Robinson v. Colo. State Lottery Div.,* 179 P.3d 998, 1007 (Colo.

2008)).  "Unjust enrichment may be appropriate when the defendant's wrongful act may be a

common-law tort, such as conversion of personal property or trespass to land, or it may be an

equitable wrong such as breach of trust or other fiduciary obligation." *Id.* (quotation marks and

citation omitted).  Equitable remedies, like unjust enrichment, may not be used to fashion relief

when there is a "plain, speedy, [and] adequate remedy at law." *Szaloczi v. John R. Behrmann*

*Revocable Trust,* 90 P.3d 835, 842 (Colo. 2004).

As discussed above, the court finds that LuxeYard fails to adequately allege that

Defendants committed, conspired in, or aided and abetted any fraudulent act.  Thus, Plaintiff's

unjust enrichment claim cannot be premised on those allegedly tortious acts.  Further, to the

extent that LuxeYard's unjust enrichment claim may be premised on Defendants' short-swing

trading in violation of Section 16(b),[13] it already has an adequate remedy at law under Section

16(b).  Indeed, Section 16(b) provides LuxeYard with the exact same remedy it could obtain

through the equitable remedy of unjust enrichment—namely, the return, or disgorgement, of any

profits obtained at LuxeYard's expense. *See Harris Group,* 209 P.3d at 1205 (noting that an

unjust enrichment claim may be appropriate where the objective of available legal remedies is

different); *Grynberg v. Total S.A.,* 538 F.3d 1336, 1352 (10th Cir. 2008) (finding there was no

practical difference between a tort claim for breach of fiduciary duty seeking disgorgement of

profits or property and an unjust enrichment claim asserting that the enrichment was unjust

---

[13] The court assumes, without deciding, that a Rule 16(b) violation can be equated to a tort.

because it was accomplished through a breach of fiduciary duty).  Thus, even if LuxeYard's

unjust enrichment claim is adequately plead, it is nevertheless properly dismissed as superfluous.

*Francis v. Mead Johnson & Co.,* No. 10-cv-00701-JLK, 2010 WL 5313540, at *9 (D. Colo. Dec.

17, 2010) (dismissing otherwise properly pled unjust enrichment claim where the plaintiff had an

adequate legal remedy under the Colorado Consumer Protection Act (CCPA) and alternative

pleading was superfluous because success on the unjust enrichment claim depended on the

success of the CCPA claim); *Touchtone Group, LLC v. Rink,* 913 F. Supp. 2d 1063, 1084 (D.

Colo. 2012) (dismissing unjust enrichment claim where it was largely duplicative of an existing

claim under the Uniform Fraudulent Transfers Act).  Accordingly, the court finds that

LuxeYard's unjust enrichment claim is properly dismissed.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motions to Dismiss LuxeYard, Inc.'s Complaint in

Intervention pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. Nos. 65) be GRANED with respect to

LuxeYard's civil conspiracy, aiding and abetting, and unjust enrichment claims, and DENIED

with respect to LuxeYard's Section 16(b) claim.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 27th day of January, 2015.

BY THE COURT:

_____

Kathleen M. Tafoya
United States Magistrate Judge