IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02990–MSK–KMT

LUXEYARD, INC.,

      Intervenor Plaintiff,

v.

AARON BELL,
CHRISTOPHER BELL,
RACHEL BELL and
WILLIAM BELL,

      Defendants.

---

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This matter comes before the court on "Defendants' Motion to Dismiss LuxeYard, Inc.'s

Complaint in Intervention Pursuant to Fed. R. Civ. P. 12(b)(6)" filed under Level One restriction

on June 20, 2014.  (Doc. No. 66.)[1]  Plaintiff LuxeYard Inc.'s ("LuxeYard") Response was filed

on July 11, 2014, and Defendants Reply was filed on July 25, 2014.  (Doc. No. 77).  The court

also addresses herein "Defendants' Unopposed Motions to Restrict Access to Motion to Dismiss

and Related Exhibits" (Doc. No. 68) and "Defendants' Unopposed Motion to Restrict Access to

Reply in Support of Motion to Dismiss" (Doc. No. 80).

---

[1] Defendants filed a separate motion to dismiss featuring an identical title on the same date at
Document Number 65.

The court has outlined a factual background of this case in the Recommendation of United States Magistrate Judge issued contemporaneously with the present Order and Recommendation.  In short, in its Complaint in Intervention, LuxeYard asserts a claim for violations of Section 16(b) of the Securities Exchange Act of 1934, as well as state law claims for civil conspiracy, aiding and abetting, and unjust enrichment, based on Defendants' alleged participation in a pump and dump scheme involving LuxeYard's stock.

In their present Motion to Dismiss, Defendants assert that LuxeYard's claims in this action are barred by a Confidential Settlement Agreement and Mutual Release (the "Settlement Agreement) executed between LuxeYard, among others, on the one hand, and Frederick Huttner ("Huttner") and Huttner 1999 Partnership Ltd. ("Huttner Partnership"), among others, on the other hand.  (Mot. Ex. 2, Declaration of Andrew Goforth [Goforth Decl.], at Ex. A [Settlement Agmt.].)  The Settlement Agreement was executed to resolve claims asserted by LuxeYard, LY Retail, and Amir Mireskandi against Huttner and Huttner 1999 Partnership, among others, in *Mireskandari, et al. v. Gann, et al.,* filed as Civil Action No. 4:12-cv-02480 in the United States District Court for the Southern District of Texas (the "Settled Action").

## I.       MOTIONS TO RESTRICT

The court first turns to Defendants' Motions to Restrict.  Defendant argues that their Motion to Dismiss and Reply should be held under Level One restriction because they quote and discuss the Settlement Agreement, as well as two versions of Huttner's will.  Defendants also seek to restrict the exhibits attached to their Motion to Dismiss, which include a full version of the Settlement Agreement and the two versions of Huttner's will.

The Supreme Court has acknowledged a common-law right of access to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996).

Thus, there is a presumption that documents essential to the judicial process are to be available to the public. However, this presumption may be overcome, and court filings or proceedings may be restricted, where the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). The court has substantial discretion in determining whether public access to a particular court record should be restricted. *Nixon,* 435 U.S. at 599.

In this District, Local Rule 7.2 governs what information must be submitted in support of restricting access to a court document. Specifically, a motion to restrict public access must:

(1) identify the document or the proceeding for which restriction is sought;

(2) address the interest to be protected and why such interest outweighs the presumption of public access . . .;

(3) identify a clearly defined and serious injury that would result if access is not restricted;

(4) explain why no alternative to restricted access is practicable or why only restricted access will adequately protect the interest in question (e.g. redaction, summarization, restricted access to exhibits or portions of exhibits); and

(5) Identify the restriction level sought.

D.C.COLO.LCivR 7.2(c).

The court does not agree that the Settlement Agreement warrants restriction.  Defendants assert that restriction of the Settlement Agreement is warranted because (1) it contains a confidentiality provision that bars public release of the terms contained therein unless required by court order or other operation of law and (2) courts have otherwise recognized the public policy of promoting settlement by affording the parties confidentiality with regard to the terms upon which settlement is achieved.  However, in their Motion to Dismiss, Defendants concede that the Settlement Agreement was publicly filed by Khaled Alattar, the former plaintiff in this action, in *LuxeYard, Inc. v. Alattar,* a case pending as Civil Action No. 4:13-cv-00251 in the United States District Court for the Southern District of Texas.  There is nothing in the record to suggest that the parties to the Settlement Agreement have moved to seal or restrict public access to the Settlement Agreement in that case.  Because the Settlement Agreement has indisputably been made public in another action, the court cannot find that the parties to the Settlement Agreement would suffer a clearly defined and serious injury if the Settlement Agreement is not restricted in this case.  According, the Settlement Agreement will be unrestricted.

The court also cannot find that restriction is warranted for Defendants' Motion to Dismiss and Reply.  Although these filings discuss and quote the Settlement Agreement extensively, as discussed above, the Settlement Agreement is already a matter of public record.  Further, although the court finds below that Huttner's wills are properly restricted, Defendants' Motion to Dismiss and Reply do not quote or discuss Huttner's wills in any detail.  Rather the Motion to Dismiss and Reply only briefly cite to the wills to establish that Defendants are Huttner's heirs.  The court does not believe the fact that Defendants are Huttner's heirs is sufficiently

controversial to warrant restriction—particularly when it is a fact essential to the arguments raised in Defendants' Motion to Dismiss. *Riker v. Fed. Bureau of Prisons,* 315 F. App'x 752, 755 (10th Cir. 2009) (a "strong presumption of access attaches" to documents that are used to determine litigants' substantive rights). Moreover, this fact is now a matter of public record because it is effectively admitted in LuxeYard's Response, which was not filed under restriction. (*See* Resp. at 6.) Accordingly, Defendants' Motion to Dismiss and Reply will be unrestricted.

The court does agree, however, that the two versions of Huttner's will are properly restricted from public access. The court agrees with Defendants that the wills are clearly private in nature and not appropriate for public scrutiny. Further, Huttner is not a party to this action, and therefore has not abandoned his interest in maintaining the confidentiality of his wills. Finally, as discussed, the wills have been tendered only to demonstrate that Defendants are Huttner's heirs. Because that fact is not in dispute, the court finds that the public's right of access to Huttner's wills is outweighed by Huttner's privacy interest.[2]

Finally, the court notes that, although they were filed under restriction, Defendants have not made any argument that the remaining exhibits attached to Defendants' Motion to Dismiss warrant restriction. As such, these exhibits will also be unrestricted.

## II.    *MOTION TO DISMISS*

As a threshold matter, although Defendants Motion is entitled "Motion to Dismiss LuxeYard's Complaint in Intervention Pursuant to Fed. R. Civ. P. 12(b)(6)," Defendants ask the

---

[2] Due to the manner in which Defendants have filed their Motion to Dismiss, it is not possible for the Clerk of Court to retain the restriction on Huttner's wills while unrestricting the Motion to Dismiss and all other documents attached thereto. As such, the court will require that Defendants refile their Motion to Dismiss and all attachments *other than Huttner's wills* as a public filing.

court to convert the Motion to Dismiss to a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d), in order to consider the Settlement Agreement and other documents attached to their Motion.[3]  (Mot. at 1-2.)  Rule 12(d) provides that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

LuxeYard has not objected to Defendants' request to convert their Motion to Dismiss to a motion for summary judgment.  Further, the court finds that Defendants' request in their Motion presented LuxeYard with the opportunity to present all materials pertinent to the motion.  Accordingly, the court finds it appropriate to convert Defendants' Motion to Dismiss into a motion for summary judgment.

### A.    *Legal Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party

---

[3] Defendants appear to be under the somewhat common misunderstanding that the first dispositive motion filed in response to a complaint must be a motion to dismiss.  This is incorrect.  Under Federal Rule of Civil Procedure 56(b), "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  As such, there is no reason Defendant could not have simply filed their Motion as a motion for summary judgment, rather than requesting that the court convert it into a motion for summary judgment.

may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## B.   *Material Facts*

The following facts are undisputed. On August 20, 2012 the Settled Action was removed from a Texas state court to the United States District Court for the Southern District of Texas, Houston Division. (Goforth Decl., Ex. B.) It is undisputed that the claims in Settled Action arise

out of the same facts and circumstances giving rise to LuxeYard's claims against Defendants in this case—namely, the acquisition of shares in LuxeYard through a reverse merger involving Top Gear, Inc., and a subsequent scheme to "pump and dump" LuxeYard's stock—that is, a scheme to artificially inflate the price of the LuxeYard shares and then sell those shares for profit at LuxeYard's expense. (*Compare* Goforth Decl., Ex. C *with* LuxeYard's Intervenor Compl., Doc. No. 58.) On September 14, 2012, the parties in the Settled Action proceeded to mediation, which resulted in a settlement. (*See* Goforth Decl., Ex. G.) On September 21, 2012, the parties, including LuxeYard, Huttner, and Huttner Partnership, executed the Settlement Agreement (*see* Settlement Agmt.), and the Settled Action was dismissed with prejudice on October 9, 2012 (Goforth Decl., Ex. H-I).

The Settlement Agreement constituted a full release of all claims that LuxeYard had or may have against "Huttner" and "Huttner 1999 Partnership, Ltd." (Settlement Agmt. ¶ 22.) The Settlement Agreement defines "Huttner" as follows:

> As used in this agreement, the term "Huttner" refers to Frederick Huttner and includes past and present attorneys, personal representatives, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors interest, heirs, and assigns and all other persons, firms, corporations, trusts, trustees, limited liability companies, spouses, and employees with whom any of the former have been, are now, or may hereafter be affiliated as it relates in any way to the Dispute.

(*Id.* ¶ 8.) Similarly, the Settlement Agreement defines "Huttner 1999 Partnership, Ltd." as follows:

> As used in this Agreement, the term "Huttner 1999 Partnership, Ltd." refers to and includes Huttner 1999 Partnership, Ltd. as well as any and all of its past and present partners, directors, officers, shareholders, employees, representatives, agents, attorneys, subsidiaries, divisions, corporate affiliates, consignees, successors, heirs and assigns, and all other persons acting for or on its behalf.

(*Id.* ¶ 9.)

In addition, LuxeYard warranted in the Settlement Agreement that, although it "may hereafter discover claims or facts relating to the [Settled Action] in addition to or different from those it now knows and believes to be true," it nevertheless "intends this Agreement to be final and binding upon the parties" and "in full satisfaction of all claims and causes of action arising out of the [Settled Action]." (*Id.* ¶¶ 30, 35.)  Finally, the Settlement Agreement states:  "This Agreement shall be binding upon and inure to the benefit of the representatives, successors, (by purchase, assignment foreclosure, or whatever means), and assigns of the Plaintiffs or Defendants." (*Id.* ¶ 41.)

In January and February 2011, during the alleged "pump and dump" scheme, Huttner, on behalf of Huttner Partnership, assigned by gift 50,000 shares of LuxeYard common stock to each of the Defendants.[4]  (Mot., Ex. 1, Affidavit of Frederick A. Huttner, ¶ 2, Ex. B.)  Further, it is undisputed that Defendants are all named as beneficiaries to Huttner's estate in his current will. (Mot. at 10-11; Resp. at 6.)

### C.    *Analysis*

Defendants argue that LuxeYard's claims in this action are barred because the Settlement Agreement released the "assigns," "successors in interest," and "heirs of Huttner and Huttner Partnership.  Defendants maintain that they are (1) the "assigns" or "successors in interest" of Huttner Partnership because it assigned LuxeYard shares to them in January and February 2011, and (2) Huttner's "heirs" because they are named as beneficiaries in Huttner's will.

The Settlement Agreement provides that it shall be governed by and construed in accordance with the laws of the State of Texas.  (Settlement Agmt. ¶ 39.)  Under Texas law, a

---

[4] Defendants Christopher and Rachel Bell appear to be married and therefore received 50,000 shares jointly.

release is a complete bar to any later action based upon matters covered in the release.

*Schomberg v. TRW Vehicle Safety Sys., Inc.,* 242 S.W. 3d 911, 913 (Tex. App. 2008) (citing

*Deer Creek Ltd. v. N. Am. Mortg. Co.,* 792 S.W.2d 198, 201 (Tex. App. 1990)).  The mere

naming of a general class of tortfeasors in a release, however, does not discharge the liability of

each member of that class.  *Duncan v. Cessna Aircraft Co.,* 665 S.W. 2d 414, 419-20 (Tex.

1984).  Instead, a release applies to a particular party only if it "refers to him [or her] by name or

with such descriptive particularity that his [or her] identity or his [or her] connection with the

tortious event is not in doubt."  *Id.* at 420.  One of the primary purposes of this rule is to "ensure

that Texas claimants do not inadvertently lose their valuable rights against unnamed and perhaps

unknown tortfeasors by settling with only one of the wrongdoers."  *Id.* at 422 (citing *Knutson v.*

*Morton Foods, Inc.,* 603 S.W. 2d 805, 807-08 (Tex. 1980) & *McMillen v. Klingensmith,* 467

S.W. 2d 193, 195-96 (Tex. 1971)).  As such, general, categorical releases clauses must be

construed narrowly.  *Id.*

In *Duncan,* the plaintiff sued Cessna Aircraft Co. for the death of her husband in an

airplane crash, based on alleged design and manufacturing defects in the crashed plane.  *Id.* at

417.  The plaintiff previously settled a suit with the owner of the aircraft and the deceased pilot

through a release that included the following language:

> We [the plaintiff and her minor children] . . . do hereby release, discharge, and forever
> quitclaim [ the owner of the plane], its agents, servants, employees, and the Estate of [the
> deceased pilot], *or any other corporations or persons whomsoever responsible therefor,*
> *whether named herein or not,* from any and all claims . . . on account of the fatal injuries
> sustained by the [deceased husband], which resulted in death, as the result of an airplane
> crash . . . .

*Id.* at 418.

10

The Texas Supreme Court found that the release did not bar the plaintiff's claims against Cessna because the release did not name Cessna, nor did it provide some specific description of Cessna. *Id.* at 420. Further, the court found the release's reference to "all corporations" did not supply the "descriptive particularity necessary to specifically identity Cessna." *Id.*

As in *Duncan,* the Settlement Agreement does not name Defendants, nor does it provide any specific description of Defendants. The court further finds the general clauses referring to Huttner's "past and present . . . successors in interest, heirs and assigns" and Huttner 1999 Partnership Ltd.'s "past and present . . .. successors, heirs and assigns" fail to provide the descriptive particularity necessary to specifically identify Defendants. Notably, the same language used to define "Huttner" is used to define every other individual released by the Settlement Agreement. (Settlement Agmt. ¶¶ 3-4, 10-11, 13, & 18.) Similarly, the same language used to define "Huttner 1999 Partnership Ltd" is used to define every other business entity released by the Settlement Agreement (*id.* ¶¶ 1, 2, 5-7, 12, 14-17, 19). The court agrees with LuxeYard that this language is a standard inclusion in a release or settlement agreement to foreclose the possibility of future claims against any individual or entity that subsequently obtains the interest at issue in the underlying suit. If the parties to the Settlement Agreement intended to specifically release Defendants, they could have used far more specific language to distinguish them from the heirs, successors, or assigns of other released individuals.

The fact that Defendants can be identified as Huttner's heirs through his will does not prompt the court to reach a different result. There is no evidence suggesting that LuxeYard was aware at the time the Settlement Agreement was executed that Defendants had been named as Huttner's heirs in his will. *Tricentrol Oil Trading, Inc. v. Annesley,* 809 S.W. 2d 218, 221 (Tex.

11

1991) (To give effect to the parties intent, a release must be construed in light of the facts and circumstances surrounding its execution) (citation omitted); *cf. Schomburg,* 242 S.W. 3d at 913 (citing *Anheuser-Busch Cos. v. Summit Coffee Co.,* 959 S.W. 2d 928, 932-34 (Tex. App. 1993)) ("When a release *refers to* a related document, that document should be considered when reviewing a release.").  To find that LuxeYard's claims against Defendants were nevertheless released based on the Settlement Agreement's vague reference to Huttner's "heirs" would thwart the policy underlying the specificity required by *Duncan*—namely, avoiding the inadvertent release of unnamed or unknown parties through a settlement with other tortfeasors.  *Duncan,* 665 S.W. 2d at 422.

Nor is the court persuaded that the Settlement Agreement can be read to include Defendants based on the fact that the allegations in the Settled Action parallel, to some extent, those in this action, or that a few exhibits to the Settled Action complaint reference Defendants. (Reply at 5; *see also* Goforth Decl., Ex. D-E.)  Even assuming that Defendants played a role in the tortious event outlined in the Settled Action complaint—which is the question raised in the present suit—there is simply no language in the Settlement Agreement referring to Defendants, as Huttner's and Huttner Partnership's successors, heirs, or assigns, "with such descriptive particularity that . . .. [their] connection with the tortious event is not in doubt."[5]  *Duncan,* 665 S.W. 2d at 420.

---

[5] Defendants argues that LuxeYard knew that Huttner had assigned them LuxeYard shares on behalf of Huttner Partnership, and that therefore Defendants connection to the tortious events at issue in the Settled Action was not in doubt.  However, *Duncan* does not simply requires that a purportedly-released individual's connection with the tortious event not be in doubt, but that the description in the release sufficiently describe the purportedly-released individuals, such that their connection to the tortious event is beyond doubt.  The mere naming of Huttner's and Huttner Partnership's successors, heirs, and assigns is clearly insufficient to meet this

Finally, the court finds that all of the cases cited by Defendants in their Reply are distinguishable from the present case.  First, in *Randall v. Dallas Power & Light Co.,* 745 S.W.2d 397, 401 (Tex. App. 1987), the court's limited holding was that where a release is based on the actions of an employer's employee, a reference to the employer's "agent" or "servant" was sufficient to refer to the employee tortfeasor with such particularity that "his identity or connection with the tortious event cannot be doubted."  Here, there is no employer-employee relationship between Huttner or Huttner Partnership and Defendants; nor was Huttner or Huttner Partnership's discharge under the Settlement Agreement premised on the actions of Defendants.

Second, in *Schomberg,* the court found that the term "component suppliers" was sufficiently descriptive to identify a specific group, including the defendant, who had supplied parts to General Motors for the manufacture of a specifically-identified vehicle.  242 S.W. 2d at 915.  As previously discussed, here, there is no descriptive language in the Settlement Agreement tying Defendants, as Huttner and Huttner Partnership's "heirs" and "assigns," to the tortious event at issue.

Third, in *Atlantic Lloyd Ins. Co. v. Butler,* 137 S.W.3d 199, 219 (Tex. App. 2004), the release in question defined the released parties as "[HRM and] all its affiliated companies, parent companies, subsidiaries, officers, agents, and employees, [and] its insurer [Atlantic Lloyds], and all its affiliated companies, officers, agents, and employees."  The Texas Court of Appeals read this release to include a specific group - namely, those who had the authority to act, and did act, on behalf of HRM or Atlantic Lloyds.  *Id.*  Here, there is no indication that Defendants, as

---

requirement.  Moreover, the fact that LuxeYard apparently knew that Defendants had been assigned LuxeYard shares in connection with the alleged pump and dump scheme actually further reinforces that the parties to the Settlement Agreement could have specifically identified or described Defendants if they intended to release them.

Huttner's and Huttner Partnership's successors, heirs, or assigns, were individuals who had the authority to act on behalf of Huttner or Huttner Partnership Ltd.

In sum, the court finds that Defendants have failed to establish that the Settlement Agreement "refers to [them] by name or with such descriptive particularity that [their] identity or [] connection with the tortious event is not in doubt." *Duncan,* 5 S.W. 2d at 420. Stated differently, the court finds that the undisputed material facts fail to show that the Settlement Agreement released the claims asserted by LuxeYard against Defendants in this action.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motion to Dismiss LuxeYard, Inc.'s Complaint in Intervention Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 66) be DENIED. It is further

ORDERED that "Defendants' Unopposed Motion to Restrict Access to Motion to Dismiss and Related Exhibits" (Doc. No. 68) is GRANTED in part and DENIED in part. The Motion is GRANTED to the extent it seeks Level One Restriction for the wills of Frederick Huttner attached to their Motion to Dismiss and DENIED in all other respects. No later than February 9, 2015, Defendants shall refile their Motion to Dismiss and the documents attached thereto, with the exception of Huttner's wills, as a public document. (*See* footnote 1, *supra.*) It is further

ORDERED that "Defendants' Unopposed Motion to Restrict Access to Reply in Support of Motion to Dismiss (Doc. No. 80) is DENIED. The Clerk of Court is directed to unrestrict Defendants' Reply in Support of Motion to Dismiss (Doc. No. 77).

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

    Dated this 27th day of January, 2015.

                                    BY THE COURT:

                                    _____
                                    Kathleen M. Tafoya
                                    United States Magistrate Judge